IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN WADE ADAMS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | |
| | § | No. 3:02-CV-2042-H |
| NATHANIEL QUARTERMAN, Director, | § | ECF |
| Texas Department of Criminal Justice | § | (Death Penalty Case) |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**ORDER ADOPTING THE FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Findings, Conclusions and Recommendation of the United States

Magistrate Judge, filed September 12, 2006; Respondent's Objections to the Magistrate's

Recommendation, with supporting brief and appendix, filed by the Attorney General of Texas on

September 25, 2006; and Petitioner's Objections to Findings, Conclusion, and Recommendation of

United States Magistrate Judge, filed September 26, 2006.

This case is brought by petition of state prisoner John Wade Adams ["Petitioner"] for writ

of habeas corpus pursuant to a sentence of death following his conviction for murder in state court.

*See State v. Adams*, No. F97-01214-PJ (Crim. Dist. Ct. No. 3, Dallas County, Tex., July 28, 1998).

In the Findings, Conclusions and Recommendation ["FCR"] before the Court, the United States

Magistrate Judge recommends that habeas relief be granted.  Specifically, the magistrate judge finds

that Petitioner's Sixth Amendment right to effective assistance of counsel was violated by the failure

of trial counsel David Pickett to investigate and present substantial, readily available mitigating

evidence of severe childhood abuse, neglect, and abandonment in the punishment phase of

Petitioner's jury trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (setting out the constitutional standard).

After independent review of the pleadings, files, and records in this case, the Court adopts the magistrate judge's well-reasoned opinion in full.  This order is intended merely as a supplement, for the purpose of addressing certain of Respondent's objections: (1) that the trial court proceedings were not considered in their entirety; (2) that the required prejudice was not established; (3) that the caselaw on which the magistrate judge relies is distinguishable; and (4) that the Petitioner's constitutional right to direct the course of his trial was not appropriately considered.  Respondent's additional objections, along with Petitioner's objections to the recommended denial of the balance of his claims for relief, are overruled without necessity of discussion.

In the first of the four objections addressed herein, Respondent alleges that in the FCR the magistrate judge misstates the breadth of the state court record.[1]  The magistrate relies on only two transcript pages of defense counsel's six-page closing argument at the punishment phase; and analyzes seven of the ninety-seven related findings of the state court. See FCR at 3 & n.2; *id.* at 10-11.  The Court is not offended by this admirably tight rein on the scope of the mitigation issue and, after review of the materials undiscussed in the fifty-one page opinion, agrees with the implicit finding that they are either duplicative or unnecessary to the analysis.

In a nominally more substantive objection, Respondent argues next that the required showing of prejudice was not established.  To prevail on a post-conviction claim for ineffective assistance of

---

[1]  Respondent objects particularly, and near-frivolously, to the alleged characterization of a mere excerpt of defense counsel's argument as "the entire argument during punishment."  FCR at 3 n.2 (emphasis added).  Read in context, the footnote phrase plainly refers to "the entire [mitigation] argument during punishment [as it relates to Petitioner's first claim]."

counsel, a prisoner must demonstrate (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the prisoner's defense. *Strickland*, 466 U.S. at 687. In this case, Petitioner's habeas claim is based on counsel's failure to investigate or to present evidence of Petitioner's childhood of physical abuse, neglect, and abandonment, documented in powerful detail in the FCR. Such abuse is an accepted basis for mitigation of sentence in capital crimes; and failure to present evidence of it is a valid ground for habeas review. *See, e.g., Williams v. Taylor*, 529 U.S. 362, 391 (2000) (reversing denial of habeas relief). To meet the requirement of prejudice, however, a petitioner must show *inter alia* that the evidence was actually available at the time of trial. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (discounting speculative evidence); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (requiring that witnesses "would have" testified to mitigating facts if called). Here, Respondent argues that the record does not support a finding that the uncalled witnesses, though they "could have" testified to the abuse, would actually have done so. *See* FCR at 35.

After consulting the record, the Court finds multiple examples of availability. Petitioner's half-sister, familiar with some incidents of abuse, states under oath: "I was never contacted by John's trial attorneys . . .. Had I been asked to testify on John's behalf, I would gladly have done so." Guillory Aff. at 4. Another half-sister, recalling Petitioner's abusive childhood, states under oath: "I would have testified for John if I thought it could have helped him." Satterlee Aff. at 3. Another relative states under oath: "John's trial lawyers never contacted me. I would have been glad to say whatever I could to help him." Boggs Aff. at 2. Moreover, the Court infers a willingness to testify on the part of Petitioner's foster mother, who was an eyewitness to and rescuer of Petitioner in his

childhood plight, from her declaration: "We loved that little boy so much! I still claim him." Elliott Aff. at 1. Availability of mitigating testimony is not in question.

The standard for determining prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams*, 529 U.S. at 391. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland*, 466 U.S. at 694). In similar cases with facts less egregious than this one, the standard has been applied without hesitation to find that prejudice existed. For example, in *Williams v. Taylor,* a writ of habeas corpus was granted for failure to present mitigating evidence of childhood abuse, even though other affirmative mitigation testimony of Williams' mother, two neighbors, and a taped excerpt from a statement by a psychiatrist was actually presented at trial.[2] *See id.* at 369-70, 397-98. Despite that showing, however, prejudice was found because "graphic" evidence of childhood "abuse and privation, or that [petitioner] was 'borderline mentally retarded,' might well have influenced the jury's appraisal of [petitioner's] moral culpability."[3] *Id.* at 398; *accord Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (approving the *Williams* standard and its application to habeas affidavit evidence). In the present case, in comparison, Petitioner's counsel presented no witnesses or mental health expert testimony at all,

---

[2] In *Williams,* aggravating circumstances were strong as well, including evidence "that Williams had savagely beaten an elderly woman, stolen two cars, set fire to a home, stabbed a man during a robbery, and confessed to choking two inmates and breaking a fellow prisoner's jaw." *Id.* at 418 (Rehnquist, C.J., dissenting).

[3] Borderline mental retardation is usually described as an IQ falling between 70 and 80. *See generally* www.britannica.com. In this case, Petitioner's IQ of 86, or "dull normal," is not far removed. FCR at 7.

though evidence similar to that in *Williams* was available, but contented himself merely with cross-examination of the state's aggravation witnesses.  *See* Trial Tr. (Punishment Phase) at 22.

In *Rompilla v. Beard*, the Supreme Court again found ineffective assistance of counsel at the mitigation portion of the punishment phase.[4]  *See* 545 U.S. 374, 380-81 (2005).  In that case, in contrast to this one, affirmative mitigation evidence at trial included appeals from five family members, all of whom had participated in detailed interviews with trial counsel on the issue of mitigation.  Three mental health witnesses were retained.  *Id*.  Yet the *Rompilla* Court held that trial counsel's failure to investigate and present additional evidence, readily available in court files, prejudiced the defendant's sentencing.  *See id*.

---

[4]  The *Rompilla* case is not squarely on point in all respects.  The *Rompilla* holding confines itself to the case's facts: "[E]ven when a capital defendant's family members and the defendant himself have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of aggravation at the sentencing phase of trial."  545 U.S. at 378.  In analyzing the first prong of the *Strickland* test -- whether counsel's performance was deficient – the *Rompilla* Court focuses on the ease of access to the defendant's court file, which contained the evidence of abuse, along with counsel's obvious obligation to read information in it that the prosecution was known to be using in its case for aggravation.  *See id*. at 385-87.  The Court left open, however, the scope of trial counsel's obligation to pursue leads.  *Id*. at 381 (acknowledging "room for debate"); *see id*. at 387 (Justice O'Connor, concurring) ("[T]oday's decision simply applies our longstanding case-by-case approach to determining whether an attorney's performance was unconstitutionally deficient . . .").  Discussion of limitations of that scope centers in part around a trial counsel's reasonable belief that additional investigation would be fruitless.  *See id*. at 381, 385.  In this case, trial counsel admits that Petitioner's own mother was uninterested and reluctant to help in mitigation.  This obvious "red flag," far from signaling futility, invited additional investigation.  *Cf. id*. at 386 (noting trial counsel's failure to discover "red flags" pursued by post-conviction counsel); *see* FCR at 34-35.  Apart from its clear application to the "prejudice" prong of the *Strickland* test to this case, the *Rompilla* decision may be applicable by analogy to the first prong as well: when a "red flag" is raised about the formative childhood relationships of a person convicted of a capital crime, investigating those relationships is arguably as obvious a course of action as reading the state's aggravation file.

In sum, the Supreme Court has held three times in the past six years that in a capital case, failure to investigate and present readily available, probative mitigation evidence of severe child abuse is not discretionary with the lawyer, not merely cumulative, not a harmlessly overlooked or optional supplement to an otherwise unobjectionable mitigation case, but instead rises to the level of a constitutional violation. *E.g.*, *id.*; *Wiggins*, 539 U.S. at 538; *Williams*, 529 U.S. at 391. Respondent fails to distinguish these decisions in any way that suggests a different result should apply here.

In the final colorable objection, Respondent argues that Petitioner instructed his counsel not to call family members as witnesses, and that under Fifth Circuit law, that instruction to counsel precludes the relief Petitioner seeks. *See, e.g.*, *Autry v. McKaskle*, 727 F.2d 358, 361 (5th Cir. 1984); *Felde v. Blackburn*, 795 F.2d 400, 401-02 (5th Cir. 1990). The objection fails for several reasons. First, it misstates the evidence as a whole. The criminal appellate court finding on which the objection is based makes no reference to an affirmative and unambiguous instruction to counsel, but says more generally: "The Court finds that Applicant did not want counsel to contact his family members." FCR at 10 (quoting Finding #48). In actual fact, Petitioner did provide his defense team with contact details for his mother; did give them information about his many siblings; and did reveal some "negative things" about his childhood. FCR at 19 (citing transcript of evidentiary hearing of October 18, 2005 ["H'g Tr."]). Counsel testified that he does not remember all that he and Petitioner discussed concerning the family. *See id.* (citing H'g Tr. at 14, 29-31, 39-40). Moreover, any reluctance by Petitioner to "bother" his family is colored by the defense team's failure to sit down with Petitioner and explain the importance of such evidence in mitigation. *Id.* (citing

H'g Tr. at 29-31, 39-40); *see* H'g Tr. at 182-83 (testimony of investigator Mike Christopher);[5] *see also* H'g Tr. at 30 (testimony of attorney David Pickett) ("If you're asking me did I say, '[Adams], is there any mitigating evidence in your childhood that might be able to be used in the punishment phase of this trial,' no, I did not do that."); *id*. at 31 (testimony of David Pickett that he did not ask Petitioner for names and phone numbers of his siblings).

Finally, and most significantly, Respondent's objection flies in the face of *Rompilla,* decided after the Fifth Circuit cases on which Respondent relies. *Compare Rompilla v. Beard*, 545 U.S. 374 (2005) *with, e.g., Autry v. McKaskle*, 727 F.2d 358 (5th Cir. 1984). In *Rompilla*, habeas relief was granted even though the petitioner there (1) refused to assist counsel in obtaining mitigation evidence; (2) affirmatively lied to counsel about the normalcy of his childhood; and (3) was "actively obstructive by sending counsel off on false leads." *Rompilla*, 545 U.S. at 381. Under *Rompilla*, a lawyer in a capital case retains a duty to make reasonable efforts to pursue mitigating evidence regardless of the client's level of participation. *See id*. at 378, 381.

Respondent's objections are, in short, all hat and no cattle. The magistrate judge's review of this exceptional case is thorough, and the appropriate standards are correctly applied. To deny habeas relief here would be to disregard Petitioner's evidence and to ignore clearly applicable law.

Accordingly, the Findings, Conclusions, and Recommendation of the United States Magistrate Judge are **ADOPTED**. Respondent's objections to the grant of habeas relief on

---

[5]     "Q: And did you discuss the importance with [Adams], or potential importance of producing mitigating evidence in order to avoid the death penalty?

A: I don't remember doing that, sir."

Petitioner's first claim are **OVERRULED**.  Petitioner's objections to the denial of habeas relief on other grounds are **OVERRULED**.

Petitioner's application for writ of habeas corpus is **GRANTED** on the first claim and otherwise **DENIED**.  Judgment will issue separately.

SO ORDERED.

DATED: September 29, 2006.


BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS